IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA COUNTY SUPERINTENDENTS OF SCHOOLS EDUCATIONAL ASSOCIATION (CCSESA), et al.,

    Plaintiffs,

  v.

KENNETH MARZION, et al.,

    Defendants.

No. C 08-04806 CW

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

    Defendants Kenneth Marzion, Lori McGartland and Sharen B. Scott have filed a motion to dismiss.  Plaintiffs oppose the motion.  The motion was heard on January 8, 2009.  Having considered all of the parties' papers and argument on the motion, the Court hereby grants it.

BACKGROUND[1]

    Defendant Kenneth Marzion is Interim Chief Executive Officer of the California Public Employees' Retirement System (CalPERS), Defendant Lori McGartland is Chief of the Employer Services Division of CalPERS and Defendant Sharen B. Scott is a Manager in the Employer Reporting Section of the Employer Services Division of

---

[1] All facts are taken from Plaintiffs' complaint and are assumed to be true for purposes of this motion.

CalPERS. Mr. Marzion is sued in both his official and individual capacities. Ms. McGartland and Ms. Scott are sued in their individual capacities. CalPERS is a state agency charged with administering the California Public Employees' Retirement System. Plaintiffs are comprised of: (1) the California County Superintendents of Schools Educational Association (CCSEA), a statewide association that provides the organizational mechanism for the fifty-eight county superintendents of schools to design and implement statewide educational programs, (2) certain employees of the San Joaquin County Superintendent of Schools, (3) certain employees of the El Dorado County Superintendent of Schools and (4) the County Superintendents of Schools from numerous counties in California.

CCSESA designated the San Joaquin County Superintendent of Schools to serve as the employer of the CCSESA staff from July 1, 1998 to September 30, 2003. Comp. ¶ 15. From October 1, 2003 to the present, CCSESA has designated the El Dorado County Superintendent of Schools to serve as the employer of CCSESA's staff. Id. These two superintendents' offices submitted the requisite employer and employee contributions to CalPERS for the CCSESA staff. Id. at ¶ 17.

On June 15, 2006, Defendant Scott and other CalPERS staff met with the El Dorado County Superintendent, the Superintendent's lawyer and Glen Thomas, who was employed as the Executive Director of the CCSESA at the time and is a Plaintiff in this case. Id. at ¶ 20. At this meeting, a CalPERS employee mentioned that CalPERS was questioning the pension service credit of several individuals, but it is not clear if Mr. Thomas knew if his pension service

2

1  credit was in question at the time.  Id.  On November 29, 2006, Mr.
2  Thomas met with a CalPERS manager to discuss his anticipated
3  retirement.  Id. at ¶ 21.  At the meeting, the manager "assured Mr.
4  Thomas that CalPERS had no pending dispute with [his] retirement
5  status or his 32.47 years of earned service credit in the CalPERS
6  system."  Id.  Mr. Thomas submitted his retirement letter on
7  December 30, 2006.  Id. at ¶ 22.  On January 16, 2007, CalPERS
8  notified Mr. Thomas that it was conducting an inquiry into his
9  service credit and that he would receive an interim retirement
10 allowance of $3,282.93 each month, rather than his anticipated
11 monthly pension check of $15,135.05.  Id. at ¶ 23.  On March 16,
12 2007 CalPERS sent a "Final Determination Letter" to Mr. Thomas
13 which stated that CalPERS rejected his retirement service credit
14 retroactive to July 1, 1998.  Id. at ¶ 24.  At no point before Mr.
15 Thomas learned of this rejection did CalPERS offer him a pre-
16 determination hearing.  Id. at ¶ 25.
17      None of the other individual Plaintiffs has submitted a
18 retirement application to CalPERS.  Id. at ¶ 26.  However, on
19 March 16, 2007 CalPERS also sent a "Final Determination Letter" to
20 the El Dorado County Superintendent of Schools which stated that it
21 retroactively rejected retirement service credit from 2003 to the
22 present for individual Plaintiffs who were working for CCSESA but
23 who were reported to CalPERS as if they were employees of the El
24 Dorado County Office of Education.  Id. at ¶ 28.  CalPERS did not
25 personally notify any of the El Dorado Plaintiffs of the decision.
26 Id.  On April 3, 2007, the El Dorado Plaintiffs and Mr. Thomas
27 filed separate administrative appeals of the CalPERS decisions.
28 Id. at ¶¶ 51 and 52.

3

On September 12, 2007, CalPERS sent a "Final Determination Letter" to the San Joaquin County Superintendent of Schools stating that it retroactively rejected retirement service credit from 1998 to 2003 for individual Plaintiffs who were working for CCSESA but who were reported to CalPERS as if they were employees of the San Joaquin County Office of Education. Id. at ¶ 29. CalPERS did not personally notify any of the San Joaquin Plaintiffs of the decision, other than Mr. Thomas. Id. On September 19, 2007, the San Joaquin Plaintiffs filed an administrative appeal of the CalPERS decision. Id. at ¶ 46.

On April 2, 2008, an Administrative Law Judge consolidated into one action the CalPERS appeals of all Plaintiffs who were employed by either the San Joaquin or El Dorado County Superintendent of Schools. Id. at ¶ 57. On August 8, 2008, CalPERS sent individual determination letters to the San Joaquin Plaintiffs notifying them of its decision retroactively to reject their retirement service credit from 1998 to 2003. The hearing before the Administrative Law Judge was originally scheduled to commence on October 14, 2008, but was continued to January 29, 2009. Id. at ¶ 60.

Before this Court, Plaintiffs sue CalPERS arguing that its notice and appeal procedures violate their procedural due process rights. Plaintiffs assert that: (1) CalPERS did not provide them with adequate notice of its decisions, (2) CalPERS should have afforded them a pre-determination hearing before making any decision about their pension credit and (3) CalPERS has failed to provide a timely post-determination hearing. Plaintiffs seek damages under 42 U.S.C. § 1983, declaratory and injunctive relief,

4

1  and attorneys' fees.

2      Defendants now move to dismiss the complaint, arguing that
3  (1) the Court lacks subject matter jurisdiction under <u>Younger v.</u>
4  <u>Harris</u>, 401 U.S. 37 (1971), (2) Plaintiffs' claims are not ripe,
5  (3) the Court should decline to exercise jurisdiction under
6  <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491 (1942),
7  (4) Plaintiffs fail to state a claim and (5) Defendants are immune
8  from suit.

LEGAL STANDARD

10  I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

11      Subject matter jurisdiction is a threshold issue which goes to
12  the power of the court to hear the case.  Federal subject matter
13  jurisdiction must exist at the time the action is commenced.
14  <u>Morongo Band of Mission Indians v. Cal. State Bd. of Equalization</u>,
15  858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed
16  to lack subject matter jurisdiction until the contrary
17  affirmatively appears.  <u>Stock W., Inc. v. Confederated Tribes</u>, 873
18  F.2d 1221, 1225 (9th Cir. 1989).

19      Dismissal is appropriate under Rule 12(b)(1) when the district
20  court lacks subject matter jurisdiction over the claim.  Fed. R.
21  Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the
22  sufficiency of the pleadings to establish federal jurisdiction, or
23  allege an actual lack of jurisdiction which exists despite the
24  formal sufficiency of the complaint.  <u>Thornhill Publ'g Co. v. Gen.</u>
25  <u>Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>Roberts v.</u>
26  <u>Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).

27  II.  Motion to Dismiss for Failure to State a Claim

28      A complaint must contain a "short and plain statement of the

5

1  claim showing that the pleader is entitled to relief."  Fed. R.
2  Civ. P. 8(a).  When considering a motion to dismiss under Rule
3  12(b)(6) for failure to state a claim, dismissal is appropriate
4  only when the complaint does not give the defendant fair notice of
5  a legally cognizable claim and the grounds on which it rests.
6  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 552 (2007).  In
7  considering whether the complaint is sufficient to state a claim,
8  the court will take all material allegations as true and construe
9  them in the light most favorable to the plaintiff.  NL Indus., Inc.
10 v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

11      When granting a motion to dismiss, the court is generally
12 required to grant the plaintiff leave to amend, even if no request
13 to amend the pleading was made, unless amendment would be futile.
14 Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
15 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
16 would be futile, the court examines whether the complaint could be
17 amended to cure the defect requiring dismissal "without
18 contradicting any of the allegations of [the] original complaint."
19 Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).
20 Leave to amend should be liberally granted, but an amended
21 complaint cannot allege facts inconsistent with the challenged
22 pleading.  Id. at 296-97.

23                              DISCUSSION
24 I.   Younger Abstention Doctrine
25      Defendants argue that, based on Younger v. Harris, 401 U.S.
26 37 (1971), the Court should abstain from adjudicating this case.
27 As the Ninth Circuit explains, "Younger is an exception to the
28 usual rule that federal courts should exercise the jurisdiction

6

1  conferred on them by statute." Gartrell Constr. Inc. v. Aubry, 940
2  F.2d 437, 441 (9th Cir. 1991).  In Younger, the Supreme Court held
3  that a federal court should not enjoin a pending state criminal
4  proceeding except in the very unusual situation that an injunction
5  is necessary to prevent great and immediate irreparable injury.
6  The Younger doctrine, however, has been extended to require
7  abstention from adjudicating federal lawsuits that would interfere
8  with state civil cases and administrative proceedings, including
9  abstention from adjudicating actions for damages under 42 U.S.C.
10 § 1983.  See Ohio Civil Rights Comm'n v. Dayton Christian Sch.,
11 Inc., 477 U.S. 619, 627 (1986); Middlesex County Ethics Committee
12 v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Gilbertson v.
13 Albright, 381 F.3d 965 (9th Cir. 2004) (en banc).
14       Under Younger, a federal court should abstain if "(1) a state
15 initiated proceeding is ongoing; (2) the proceeding implicates
16 important state interests; (3) the federal plaintiff is not barred
17 from litigating federal constitutional issues in the state
18 proceeding; and (4) the federal court action would enjoin the
19 proceeding or have the practical effect of doing so, i.e., would
20 interfere with the state proceeding in a way that Younger
21 disapproves." San Jose Silicon Valley Chamber of Commerce
22 Political Action Committee v. City of San Jose, 546 F.3d 1087, 1092
23 (9th Cir. 2008).  The parties dispute whether state administrative
24 proceedings are ongoing.
25       To determine whether there is a pending state judicial
26 proceeding within the meaning of Younger, the critical question is
27 "whether the state proceedings were underway before the initiation
28 of the federal proceedings."  Weiner v. County of San Diego, 23

7

1  F.3d 263, 266 (9th Cir. 1994).  Plaintiffs assert that there is no
2  such proceeding pending because the complaint filed in this Court
3  is "wholly independent of the pending state administrative
4  proceedings."  However, the face of the complaint reveals that the
5  pending state administrative proceeding is not "wholly independent"
6  of the instant federal action.  Both the federal and state actions
7  concern CalPERS' investigation of Plaintiffs' employment status,
8  CalPERS' decision to reject Plaintiffs' service credit and the
9  procedural details of the administrative law proceeding now in
10 progress.  The two proceedings are concurrent and intertwined and
11 thus the first Younger requirement is satisfied.
12      The second requirement under Younger, that the state
13 proceeding "implicates important state interests," Gilbertson v.
14 Albright, 381 F.3d 965, 978 (9th Cir. 2004) (en banc), is also
15 satisfied.  "The importance of the interest is measured by
16 considering its significance broadly, rather than by focusing on
17 the state's interest in the resolution of an individual's case."
18 Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 618 (9th Cir.
19 2003).  The California legislature enacted a comprehensive
20 statutory scheme comprising eighteen chapters of the California
21 Government Code that are dedicated exclusively to the
22 administration of CalPERS.  See Cal. Gov't Code §§ 20000-21765.
23 The administration of retirement benefits for public employees
24 impacts almost every state and local government agency.  Thus, it
25 is clear that the state proceeding implicates California's
26 important interest in administering the statewide public employees'
27 retirement systems.
28      Third, in order for Younger abstention to apply, Plaintiffs

8

must have an opportunity to litigate their federal constitutional challenges in the state proceeding.  <u>Gilbertson</u>, 381 F.3d at 978. Here, if Plaintiffs are dissatisfied with the result of the administrative law process, they can petition for a writ of mandate in state court under Cal. Civ. Proc. Code § 1094.5.  "That procedure suffices for purposes of <u>Younger</u> abstention."  <u>San Jose Silicon Valley</u>, 546 F.3d at 1095.

The final <u>Younger</u> requirement is also satisfied because the federal suit would "enjoin or have the practical effect of enjoining the [state] proceeding."  <u>Id.</u>  The relief Plaintiffs seek in the state administrative proceeding provides the foundation for their claim in federal court.  Specifically, in the state proceeding, Plaintiffs challenge CalPERS' decision to deny them retirement benefits, and in federal court, they claim CalPERS' decision deprived them of their due process rights.  The type of relief Plaintiffs seek in federal court would, in effect, require the state to start its proceedings over from the beginning.  The relief sought, therefore, would "enjoin . . . or otherwise involve the federal court in terminating or truncating" the administrative proceeding.  <u>Id.</u> at 1096.

The Court concludes that the four <u>Younger</u> requirements have been satisfied.  Plaintiffs argue that, irrespective of whether the <u>Younger</u> requirements were met, the Court should not abstain because Defendants have acted in bad faith.  <u>Middlesex</u>, 457 U.S. at 435 (an exception to <u>Younger</u> exists if there is "a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.").  However, nothing in Plaintiffs' complaint alleges any action that demonstrates an improper motive

9

on Defendants' part.  Therefore, because there has been no showing of bad faith, harassment, or an extraordinary circumstance, the Court must abstain.  Where a district court finds Younger abstention appropriate as to a request for declaratory or injunctive relief, the court may not retain jurisdiction, but should dismiss.  Judice v. Vail, 430 U.S. 327, 348 (1977); see also Beltran v. California, 871 F.2d 777, 782 (9th Cir. 1988) (holding that Younger abstention requires dismissal of the federal action).  Thus, the Court dismisses Plaintiffs' third cause of action for declaratory relief and fourth cause of action for injunctive relief.

As noted above, the Younger principles also apply to claims for damages under § 1983; however, "the correct disposition is to defer -- not to dismiss -- when damages are at issue."  Gilbertson, 381 F.3d at 982.  Nevertheless, Defendants argue that Plaintiffs' claims for damages should be dismissed because they are immune from suit based on the doctrine of qualified immunity, as will be discussed in a subsequent section.

II.   Declaratory Judgment Act and Ripeness

In addition to arguing Younger abstention, Defendants argue that Plaintiffs' declaratory and injunctive relief claims are not ripe for review.  The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).  The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution.  American States

10

1 Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1993).

2    Under the Declaratory Judgment Act, a two-part test is used
3 to determine whether a declaratory judgment is appropriate.
4 Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir.
5 2005).  First, the Court must determine if an actual case or
6 controversy exists within its jurisdiction.  Id.  Second, if so,
7 the Court must decide whether to exercise its jurisdiction.  Id.

8    Declaratory relief is appropriate if "the facts alleged,
9 under all the circumstances, show that there is a substantial
10 controversy, between parties having adverse legal interests, of
11 sufficient immediacy and reality to warrant the issuance of
12 declaratory judgment.  A case is ripe where the essential facts
13 establishing the right to declaratory relief have already
14 occurred."  Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1192 (9th
15 Cir. 2000).

16    Plaintiffs challenge the notice and procedures applied to
17 them by CalPERS when the agency retroactively rejected their
18 retirement credit.  However, Plaintiffs' substantive claims
19 regarding their right to this credit must first be resolved in the
20 state administrative proceeding.  In Public Service Com. v. Wycoff
21 Co., 344 U.S. 237, 246 (1952), the Supreme Court held that "the
22 declaratory judgment procedure will not be used to preempt and
23 prejudge issues that are committed for initial decision to an
24 administrative body."  The Court further held, "State
25 administrative bodies have the initial right to reduce the general
26 policies of state regulatory statutes into concrete orders and the
27 primary right to take evidence and make findings of fact."  Id. at
28 247.  Plaintiffs are currently engaged in a process to obtain an

11

"initial decision" on their substantive claims by an "administrative body." The Court will not "preempt and prejudge" those issues. Therefore, the claims are not ripe for review.

Even if the claims were ripe for review, and Younger abstention was not appropriate, the Court exercises its discretion to decline jurisdiction. In Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942), the Supreme Court identified several factors for the district court to consider when determining whether to exercise jurisdiction over a declaratory judgment action, and the Ninth Circuit has affirmed that "the Brillhart factors remain the philosophical touchstone for the district court." Government Employees Ins. Co. v. Dizol, 133 F.3d 1202, 1225 (9th Cir. 1998). "The District court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Id. (internal citations omitted). The Ninth Circuit has also suggested considerations in addition to the Brillhart factors that may assist in deciding whether to exercise jurisdiction, including:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

Id. at 1225 n.5.

Many of the Brillhart and Government Employees Ins. Co. factors weigh against the Court's exercising its jurisdiction: the federal suit does not present claims distinct from the issues

12

raised in the state administrative proceeding; there is an inference of forum shopping; the federal suit seeks an injunction against and would interfere with the state administrative proceeding; and there is the possibility of duplicative litigation or inconsistent judgments. Therefore, the Court concludes that the present suit is not a proper use of the Declaratory Judgment Act, 28 U.S.C. § 2201, to resolve the procedural due process claims raised by Plaintiffs.

III. Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a defendant is entitled to qualified immunity, the court engages in the following inquiries, although the court has discretion to determine the order in which these

inquiries take place. Pearson v. Callahan, ___ S. Ct. ___, 2009 WL 128768, at *10 (January 21). The court may first determine whether the plaintiff has alleged the deprivation of an actual constitutional right. Conn v. Gabbert, 526 U.S. 286, 290 (1999). In other words, the court asks, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier, 533 U.S. at 201.

The court may also choose first to inquire whether the right at issue was clearly established. Pearson, 2009 WL 128768, at *10. This inquiry must be made in light of the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at 202. "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Hope v. Pelzer, 536 U.S. 730, 741 (2002). As the Supreme Court has explained, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 753. The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his or her conduct was lawful in the situation confronted. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). If the law did not put the official on notice that his or her conduct would be clearly unlawful, a conclusion of qualified

14

immunity is appropriate. Saucier, 533 U.S. at 202. Therefore, qualified immunity shields an official from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he or she confronted. Id. at 206. The defendant bears the burden of establishing that his or her actions were reasonable, even though he or she violated the plaintiff's constitutional rights. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

"To establish a due process violation, a plaintiff must show that he has a protected property interest under the Due Process Clause and that he was deprived of the property without receiving the process that he was constitutionally due." Levine v. City of Alameda, 525 F.3d 903, 905 (9th Cir. 2008). "Constitutional due process requires that a party affected by government action be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" California ex rel. Lockyer v. Fed. Energy Regulatory Comm'n, 329 F.3d 700, 708 n.6 (9th Cir. 2003) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

Plaintiffs do not cite any case law or statute to support the proposition that they have a protected property interest in their pensions or that due process requires CalPERS to conduct a pre-determination hearing before issuing its decision to reject their service credit. Without guidance from cases or statutes, the Court cannot conclude that Plaintiffs have such rights, much less that they are clearly established. Similarly, Plaintiffs have not shown that Defendants violated clearly established law with respect to

15

the notice provisions utilized by CalPERS or any requirement of a pre-determination hearing. Therefore, Defendants are entitled to qualified immunity.[2] The Court also denies Plaintiffs' request to conduct discovery on this issue because no new factual allegations could uncover the legal right missing from Plaintiffs' claims. Therefore, the Court dismisses Plaintiffs' first and second causes of action for damages with prejudice because amendment would be futile.[3]

IV. Judicial Notice

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of accurate and ready determination. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688-690 (9th Cir. 2001); Interstate Natural Gas Co. v. Southern California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953). The Court grants Plaintiffs' request for judicial notice of Exhibits C through G to their request because these documents are public court records capable of accurate and ready determination. The Court denies Plaintiffs' request for judicial notice of the letters contained in Exhibits A and B because they are not the type of documents traditionally recognized under Rule 201.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants'

---

[2] Defendants also argue that Plaintiffs' complaint should be dismissed because it fails to state a valid claim. Because the Court dismisses Plaintiffs' complaint for other reasons, it need not consider this argument.

[3] The Court also dismisses Plaintiffs' remaining cause of action for attorney's fees under 42 U.S.C. § 1988 because Plaintiffs are not "the prevailing party."

16

motion to dismiss with prejudice (Docket No. 15).  The Clerk shall enter judgment and close the file.  Defendants shall recover their costs from Plaintiffs.

   IT IS SO ORDERED.

Dated: 3/2/09

_____
CLAUDIA WILKEN
United States District Judge